Filed 3/16/26  P. v. Herrera CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LORENZO HERRERA,<br><br>    Defendant and Appellant. | 2d Crim. No. B338970<br>(Super. Ct. No. BA517552)<br>(Los Angeles County) |

Lorenzo Herrera appeals after a jury convicted him of first degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a); count 1) and possession of a firearm by a felon (*id.*, § 29800, subd. (a)(1); count 2).  The jury also found true the allegation that appellant personally used a firearm in the commission of the murder (*id.*, § 12022.5, subd. (a)).  The court sentenced appellant to a total term of 29 years to life.

Appellant contends:  (1) the court incorrectly instructed the jury as to appellant's buccal swab refusal; (2) evidence of multiple prior detentions deprived him of a fair trial; and (3) trial counsel

was ineffective in multiple respects. Appellant also asserts cumulative error. We will affirm.

STATEMENT OF FACTS

On February 16, 2021, at around 12:30 a.m., David Robinson was in the area of 6th Street and Los Angeles Street when a shooting occurred. Robinson called 911.

At the scene, Robinson told police he saw a Hispanic man exit a dark gray Ford by a blue tent. The driver asked Juan Jimenez and another man for somebody. The driver then fired about eight shots at Jimenez as Jimenez was running. Robinson described the suspect as about 5'8" or 5'9", "[a]bout 185" pounds, and "probably" 42 years old, with "[r]eceding in the top" hair and a gray hoodie. Appellant's DMV records indicated he was 41 years old in February 2021, 5'9", and 185 pounds.

In a March 2021 interview, Robinson said the shooter drove up in a car and asked for someone. A man walked up and looked before running. The shooter subsequently "asked for Juan or something like that . . . ." The shooter exited the car and chased Jimenez, shooting him in the back. When shown an array of six photographs that included both appellant and his brother, Mario Herrera, Robinson said it "[l]ooks like . . . it's number two [appellant] to me." Robinson did not identify appellant at trial.

Surveillance video showed a black Lexus arrive at the shooting scene at around 12:30 a.m. Video captured Jimenez running down the street before collapsing, and the Lexus driving away. One of the Lexus's rear taillights was out.

Law enforcement found 12 spent casings at the scene. Jimenez died of multiple gunshot wounds.

After the shooting, law enforcement received a call from an anonymous source that prompted them to research the nickname

"Speedy." Two people in a police database went by that name—appellant and another person. The other person did not match Robinson's description of the shooter.

On February 25, 2021, law enforcement went to a residence associated with Robin Smedley, appellant's girlfriend. There, they saw the parked black Lexus. On March 2, 2021, law enforcement viewed video from a camera covering that residence. The video showed a black sedan matching the suspect vehicle enter the residence's driveway an hour after the shooting. The sedan had an inoperative brake light.

After leaving the store that had this video, law enforcement saw appellant sitting in the Lexus's driver's seat. Appellant and Smedley appeared to be arguing. As law enforcement approached, Smedley told appellant it was the police, and appellant yelled at her, "Get in their way." Smedley did so, and appellant escaped.

On March 7, 2021, law enforcement impounded a Lexus driven by Lorenzo Herrera, Jr., appellant's son. In it they found a light attachment for a firearm and two gray hoodies. According to DMV records, Mario Herrera was the Lexus's registered owner, but he sold the vehicle to Lorenzo Herrera on January 30, 2021.

On July 23, 2021, law enforcement saw appellant in the doorway of a residence. Appellant made eye contact and immediately went inside. Law enforcement established a perimeter and repeatedly called for appellant to exit. After more than four hours elapsed, appellant did so and was arrested.

In July 2023, Officer Fernando Tenorio and Detective Louis Garcia went to jail to obtain a buccal swab from appellant. Officer Tenorio read appellant a court order for the sample, which

included the following language: "The defendant is advised that a willful refusal to provide such court ordered sample can and will be used against him in a court of law." Appellant refused to provide a sample. A copy of the court order was admitted into evidence.

One week later, Detective Garcia collected two swabs from appellant's cheek.

According to an officer who listened to approximately 30 of appellant's jail calls, appellant did not deny committing the charged murder in those calls.

The parties stipulated appellant had a prior felony conviction.

## DISCUSSION

### Buccal Swab Jury Instruction

Appellant argues the instruction regarding his buccal swab refusal "was legally erroneous [because it] told appellant's jurors that *any* refusal may support an inference of consciousness of guilt, regardless of whether it was sought under a warrant." We conclude any error was harmless.[1]

"'A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction

---

[1] Pursuant to CALCRIM No. 378, the court instructed: "If the defendant refused to provide a buccal swab or tried to affect the validity of the buccal swab, that conduct may show that he was aware of his guilt. If you conclude that the defendant refused to provide a buccal swab or tried to affect the validity of the buccal swab, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant refused to provide a buccal swab or tried to affect the validity of the buccal swab cannot prove guilt by itself."

4

accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed "in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner."'" (*People v. Lewis* (2023) 14 Cal.5th 876, 900.)

Appellant argues "the instruction permitted the jurors to entertain an inference that appellant was guilty of murder in his mind without finding he refused a court order." However, based on the evidence in this case, any reasonable juror would conclude a court order authorized the sample. In addition to the testimony of law enforcement regarding the order, a copy of the order was admitted into evidence. Thus, the instruction's silence as to the necessity of a court order was of no consequence.

Moreover, an abundance of evidence identified appellant as the perpetrator. Shortly after the shooting, an eyewitness gave police a description of the shooter that very closely matched appellant. That witness later selected appellant's photograph in an array. An hour after the shooting, surveillance video captured a vehicle matching the shooter's Lexus entering the driveway of a residence associated with Smedley, appellant's girlfriend. When law enforcement saw appellant sitting in the Lexus's driver's seat in that same area, he escaped with Smedley's help. Once apprehended, appellant did not deny committing the murder in the jail calls a law enforcement officer reviewed.

In sum, there is no reasonable probability of a more favorable outcome absent any error in the instruction, and any

5

such error is harmless beyond a reasonable doubt.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] (*Chapman*).)

*Admission of Appellant's Prior Detentions*

The trial court admitted five of appellant's prior detentions. Except for the most recent 2021 stop, all occurred within blocks of the shooting scene.  Appellant contends the two oldest detentions and all instances of appellant in handcuffs were unduly prejudicial.  Assuming these contentions have not been forfeited, we conclude all the detentions were properly admitted and any error resulting from the admission of handcuff evidence was harmless.

In August 2018, law enforcement conducted a pedestrian stop of appellant.  Appellant said they used to call him Little Speedy.  Appellant was handcuffed.  The jury viewed video of the stop.

In October 2018, Officer Christopher Tran detained appellant, a pedestrian.  Appellant said he went by the nickname Speedy.  Law enforcement arrested appellant.  A still image showed appellant standing with his hands behind his back.

In July 2019, Officer Tran conducted a pedestrian stop of appellant.  Appellant told Officer Tran they used to call him Little Speedy.  A pat-down of appellant revealed no firearm.  The jury viewed video of the stop.

In November 2020, law enforcement conducted a traffic stop of appellant.  Smedley was the passenger.  A still image showed appellant with his hands behind his back.

On January 18, 2021, law enforcement conducted a traffic stop of appellant, who was driving the black Lexus.  A still image

6

appeared to show appellant being handcuffed, and an officer testified he was handcuffed but not arrested.

"""Only relevant evidence is admissible (Evid. Code, § 350; [citations]), and, except as otherwise provided by statute, all relevant evidence is admissible[.]  (Evid. Code, § 351; see also Cal. Const., art. I, § 28, subd. (d) . . .)."""" (*People v. Thompson* (2022) 83 Cal.App.5th 69, 102.)  Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

"We review the trial court's rulings regarding the admissibility of the evidence for an abuse of discretion."  (*People v. Mataele* (2022) 13 Cal.5th 372, 413.)

The court did not abuse its discretion in admitting the two 2018 detentions.  Besides constituting additional evidence of appellant's nickname, these detentions tied appellant to the area of the shooting as early as 2018.  Solidifying appellant's repeated presence in that area stretching back years provided further circumstantial evidence of his identity as the shooter.  The risk of prejudice associated with the 2018 detentions did not substantially outweigh their probative value.  (Evid. Code, § 352.)

As to the handcuff evidence, we conclude its admission does not rise to the level of a due process violation rendering appellant's trial fundamentally unfair.  (*People v. Partida* (2005) 37 Cal.4th 428, 439.)  The evidence was not of an inflammatory or upsetting nature.  Any state law error in admitting this evidence was harmless.  (*Watson*, *supra*, 46 Cal.2d at p. 836.)  The jury knew appellant had a prior felony conviction.  Especially given

7

the strong evidence of appellant's guilt as detailed above, there is no reasonable probability the jury would have reached a more favorable result had the handcuff evidence been excluded.

*Ineffective Assistance of Counsel*

Appellant claims ineffective assistance of counsel based on the failure to object to (1) impeachment of Robinson's trial testimony regarding fear with his preliminary hearing testimony; and (2) the prosecutor's alleged misconduct achieved "by suggesting . . . that appellant provided false information to the DMV to hide his ownership of the Lexus." (Bold and capitalization omitted.)

"To establish ineffective assistance of counsel entitling him to relief, a defendant must demonstrate that counsel performed deficiently under an objective standard of professional reasonableness and thereby caused prejudice under a test of reasonable probability of an effect on the outcome." (*People v. Alvarez* (1996) 14 Cal.4th 155, 239.) We "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" (*People v. Earp* (1999) 20 Cal.4th 826, 896.) "A defendant must prove prejudice that is a '"demonstrable reality," not simply speculation.'" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

"On direct appeal, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,'" we must reject the claim "'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'"" (*People v. Caro* (2019) 7 Cal.5th 463, 488.)

First, appellant's counsel did not object when the People admitted a portion of Robinson's preliminary hearing testimony

through the investigating officer.  At that hearing, Robinson testified he was concerned for his safety.  But at trial, Robinson testified he was not afraid of retaliation or intimidation. Robinson claimed he had been worried about his arrest warrant when he met with detectives.  Defense counsel might have reasonably determined exposing inconsistency in Robinson's account would undermine his credibility.  Appellant has not shown deficient performance.

Second, while he successfully objected after the investigating officer testified the Lexus was registered to appellant, defense counsel did not object to the following colloquy:

"Q:  Let me ask you this:  When you're a patrol officer did you make a [*sic*] traffic stops?

"A:  Yes.

"Q:  When you made traffic stops, would sometimes the person who claimed to be the registered owner not be the registered owner?

"A:  Yes.

"Q:  Do you – are you aware, given your experience, that sometimes there is a delay in change of registration in terms of who the owner of a vehicle is when there's a transfer?

"A:  Yes."

Defense counsel's silence was not deficient performance because the prosecutor's questions were not objectionable, much less misconduct.  The exchange helped establish that DMV records regarding a registered owner do not always reflect a recent vehicle transfer.  The questions regarding traffic stops were simply foundational to the officer's knowledge of this fact. In this case, DMV records did show a recent transfer of the Lexus on January 30, 2021, about two weeks before the murder and less

than six months before appellant's arrest.  The prosecutor's questions exploring the impact of a vehicle transfer did not imply malfeasance, including by appellant or his family.

### *Cumulative Error*

We reject appellant's cumulative error argument.  To the extent errors occurred, even when considered cumulatively, no prejudice exists under either the *Watson* or *Chapman* standards. Appellant received due process and a fair trial.  (See *People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CODY, J.


We concur:


YEGAN, Acting P. J.


BALTODANO, J.

Mark S. Arnold, Judge
Superior Court County of Los Angeles

_____

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jonathan Kline, Supervising Deputy Attorney General, and Kristen J. Inberg, Deputy Attorney General, for Plaintiff and Respondent.